UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE A. MITCHELL,<br><br>      Plaintiff,<br><br>    v.<br><br>B-WAY CORPORATION,<br><br>      Defendant. | No. 20 CV 1648<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Lee Mitchell filed an employment discrimination claim against his former employer, B-Way Corporation, with the Illinois Department of Human Rights and litigated it all the way to the Illinois Supreme Court. He now files the same dispute in federal court, alleging violations of Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866. For the reasons stated below, B-Way's motion to dismiss is granted.

**I.  Legal Standard**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). I accept the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Iqbal* at 678–79. I do not accept allegations that are unsupported, conclusory, or legal conclusions. *Id.* I construe pro se complaints liberally, but this lenient

standard does not excuse pro se plaintiffs from following procedural rules. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). On a motion to dismiss, I can only consider certain documents outside the pleadings: documents attached to the complaint, documents that are central to the complaint and referenced in it, and information subject to judicial notice, like public court documents and decisions of administrative agencies. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018); *Opoka v. I.N.S.*, 94 F.3d 392, 394–95 (7th Cir. 1996); Fed. R. Evid. 201. I disregard documents that fall outside this definition and factual allegations not alleged in the amended complaint.[1] *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (a plaintiff may not amend his complaint by adding new facts in his response brief).[2] Courts ordinarily do not resolve affirmative defenses, like res judicata, failure to exhaust administrative remedies, or the statute of limitations, on a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaints do not have to anticipate affirmative defenses). However, a plaintiff may plead himself out of court (so dismissal is appropriate) when the existence of a valid defense is so plain from the face of the complaint and properly noticed facts. *Id.* (dismissal based on the statute of limitations); *Muhammad v. Oliver*,

---

[1] Of the documents submitted with B-Way's brief and Mitchell's response, I take judicial notice of the U.S. Equal Employment Opportunity Commission's notice of charge filed, the Illinois Department of Human Right's notice of dismissal, the IDHR's investigation report, the Illinois Human Rights Commission's order, the Illinois Appellate Court's opinion and order, the Illinois Appellate Court's rehearing order, Mitchell's Illinois Supreme Court filing, and the Illinois Supreme Court's order. I disregard all other documents.

[2] I may, however, consider new factual elaborations that are consistent with the plaintiff's factual allegations in the pleadings. *Geinosky v. City of Chicago*, 675 F.3d 743, 745, n. 1 (7th Cir. 2012).

547 F.3d 874, 878 (7th Cir. 2008) (dismissal based on res judicata); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (dismissal based on failure to exhaust); *Tierney v. Vahle*, 304 F.3d 734, 738–39 (7th Cir. 2002) (properly noticed evidence is incorporated into the pleadings).

## II. Facts

Lee Mitchell, an African American man, worked as a machine operator at B-Way Corporation, a container manufacturing company. [24-1] at 6.[3] The company had a policy that prohibited fighting on the premises, [24-1] at 7, and a policy that prohibited the company from discriminating or retaliating against employees who reported any ideas or concerns. [15] at 16. At some point, Mitchell was involved in a workplace safety incident involving a Hispanic employee. [15] at 11. B-Way's human resources manager, also Hispanic, did not discipline the Hispanic employee for nearly driving into Mitchell. [15] at 11. Sometime afterwards, Mitchell got into a physical altercation with another Hispanic co-worker. [15] at 11–13. Mitchell reported the incident to his supervisors. [15] at 13. The company suspended Mitchell's co-worker

---

[3] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents. Mitchell referenced the IDHR's investigation in his complaint. *See e.g.* [15] at 12 (citing plaintiff's exhibits 2a and 2b). Plaintiff's exhibits 2a and 2b are excerpts of the IDHR's investigation report, which Mitchell attached to his complaint. [15] at 19–20. The IDHR's investigation report is central to his claim. B-Way Corporation attached the full report. [24-1] at 6–9. Mitchell does not dispute its authenticity, so I refer to B-Way's version of the document, while still drawing all reasonable inferences in Mitchell's favor. *See Mueller v. Apple Leisure Corporation*, 880 F.3d 890, 895 (7th Cir. 2018) (the rule permitting certain documents outside the pleadings without converting a motion to dismiss to a summary judgment motion is a liberal one) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (courts can refer to attached documents when their authenticity isn't disputed and all reasonable inferences are drawn in the plaintiff's favor)); *see also* footnote 4 below (describing judicial notice of administrative reports).

immediately, investigated the incident, and took witness statements. [15] at 11–13, 18; [24-1] at 7. The company suspended Mitchell a few days later. [15] at 18. About a week after the incident, B-Way concluded that both employees fought on company premises, and terminated Mitchell and the co-worker. [24-1] at 8. Mitchell believed his co-worker wasn't terminated but transferred to another shift. [15] at 10; [24-1] at 7.

Mitchell filed a charge with the Illinois Department of Human Rights, alleging that he was terminated based on race and his aggressor was treated more favorably. [15] at 6–7. The charge was cross-filed with the United States Equal Employment Opportunity Commission. [15] at 2, 6. The IDHR investigated the incident. [24-1] at 6–9. According to both the Illinois Human Rights Commission and Illinois Appellate Court, Mitchell missed the IDHR's fact-finding conference but was excused for good cause, and the IDHR investigator obtained Mitchell's evidence over a phone call instead. [24-1] at 11–12, 24–25.[4] The IDHR concluded that B-Way terminated Mitchell for fighting on the premises in violation of company policy. [24-1] at 8–9. The IDHR did not find evidence of discrimination because Mitchell's co-worker was also terminated and therefore did not receive more favorable treatment. [24-1] at 8–9. The IDHR dismissed Mitchell's case for lack of substantial evidence. [24-1] at 4–5. The

---

[4] I can take judicial notice of state court and state administrative agency decisions. *See 520 South Michigan Ave. Associates, Ltd. v. Shannon*, 549 F.3d 1119, 1137, n.14 (7th Cir. 2008) (taking notice of state court decisions); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004) (taking judicial notice of administrative findings); *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir.1998) (A court may "take judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies…").

dismissal notice described two options: Mitchell could seek review before the Illinois Human Rights Commission, or commence a civil action in state circuit court. [24-1] at 4–5. If he chose the latter, the notice indicated Mitchell needed to notify the EEOC that he planned to exhaust his state remedies. [24-1] at 5.[5] Alternatively, if the charge alleged a violation of Title VII, Mitchell could also request the EEOC perform a substantial-weight review of the dismissal. [24-1] at 5.

Mitchell chose to file a request for review with the Commission. *See* [24-1] at 11. On review, Mitchell argued that he would have provided rebuttal evidence if he had been able to attend the fact-finding conference and that B-Way's policy did not include fighting as cause for termination. [24-1] at 12–13. He did not raise any other argument. Nor did Mitchell attach any additional information or documents in support of his arguments, according to the Illinois Appellate Court. [24-1] at 22–23.[6] The Commission concluded that there was no discrimination because the evidence established Mitchell's co-worker was also terminated. [24-1] at 13. Additionally, the Commission found no evidence that the company's explanation for termination—that

---

[5] The IDHR's notice of dismissal "shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court … If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in circuit court." 775 ILCS § 5/7A-102(C)(4); *see also Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (a district court can take judicial notice of state statutes because they are matters of public record).

[6] "When a request for review is properly filed, the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request. In its discretion, the Commission may designate a hearing officer to conduct a hearing into the factual basis of the matter at issue." 775 ILCS § 5/8-103(B).

Mitchell violated the company's policy against fighting—was pretextual. [24-1] at 13. The Commission sustained the IDHR's dismissal. [24-1] at 14.

Mitchell filed a petition for review in the Illinois Appellate Court, which was his only option to seek review. 775 ILCS § 5/8-111(B). Mitchell argued that he did not have an opportunity to present his evidence at the fact-finding conference and was terminated because of his race. [24-1] at 18, 25. The court reviewed Mitchell's claims that he did not touch his co-worker and that his co-worker wasn't terminated but rather transferred to another shift, as well as the appellees' evidence. [24-1] at 19–22. As a threshold matter, in response to the appellees' argument that Mitchell's brief contained numerous factual assertions and attachments outside the record, the court noted that Mitchell failed to comply with procedural rules and stated it would disregard any inappropriate factual assertions. [24-1] at 26. The court concluded that Mitchell's due process rights were not violated because the fact-finding conference was within the IDHR's discretion, Mitchell provided his evidence to the IDHR investigator over the phone, and Mitchell had the opportunity to present additional evidence in front of the Commission, even though he failed to do so. [24-1] at 27–28. The Court also concluded that the Commission did not abuse its discretion deciding Mitchell's discrimination claim because Mitchell failed to show he was meeting his employer's legitimate business expectation or that his co-worker was treated more favorably. [24-1] at 29–31. Nine years after the incident, the Illinois Appellate Court affirmed the Commission's decision to sustain the IDHR's dismissal for lack of substantial evidence. [24-1] at 17, 31.

6

Mitchell requested a rehearing, which was denied. [24-1] at 33. He then petitioned for leave to appeal the decision in the Illinois Supreme Court. [24-1] at 35.[7] About two months later, Mitchell received a right to sue notice from the EEOC, indicating the EEOC had adopted the findings of the IDHR and that Mitchell could file a lawsuit under federal law within 90 days of the notice. [15] at 4. The next month, the Illinois Supreme Court denied his petition for leave to appeal. [24-1] at 40. Two days later, Mitchell filed this action, pro se, in federal court. [1].[8]

### III. Analysis

Mitchell alleges race and color discrimination under Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866. He also alleges theories based on retaliation and failure to promote.

"Res judicata ensures the finality of decisions." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). If a plaintiff receives a final judgment on the merits of his case, the doctrine of res judicata prevents the plaintiff from relitigating claims that were or could have been litigated during an earlier proceeding. *Id.* The doctrine helps courts avoid judicial waste and helps defendants avoid the burden of defending themselves twice in the same suit. *Arizona v. California*, 530 U.S. 392, 412 (2000). The doctrine applies to proceedings in state and federal court. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to respect the final judgments of state courts

---

[7] I can take judicial notice of court filings to establish the fact of such litigation (but not for the truth of the matters asserted in the other litigation). *See Opoka v. I.N.S.*, 94 F.3d 392, 395 (7th Cir. 1996) (citations omitted).

[8] Since filing his claim with the IDHR, Mitchell has always represented himself.

7

when that state's law would prohibit relitigating the claim. *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014) (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982)). Under Illinois law, courts must prohibit a lawsuit 1) when a court of competent jurisdiction has already rendered a final judgment on the merits of the case; and 2) when the case involves the same parties as the prior lawsuit; and 3) the same causes of action. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 18. Separate claims are considered the same cause of action if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. *Id.* ¶ 21 (also known as the "transactional test"). If all three elements are met, res judicata bars all legal theories that were or could have been litigated. *Id.* ¶ 18. Here, the Illinois Appellate Court issued a final judgment on the merits of Mitchell's employment discrimination claim based on race. [24-1] at 17. Mitchell and B-Way were parties to the case. [24-1] at 17. Mitchell's race-based claim under Title VII arises from the same exact set of facts surrounding his termination that the Illinois Appellate Court reviewed.[9] The elements of res judicata under Illinois law are met.

However, res judicata does not apply if the plaintiff did not have a "full and fair opportunity" to litigate his claim in the prior action. *Dookeran v. County of Cook, Ill.*, 719 F.3d 570, 576 (7th Cir. 2013) (citing the Due Process Clause of the Fourteenth

---

[9] While the IHRC has no statutory authority to entertain federal claims, *see Blount v. Stroud*, 232 Ill.2d 302, 326 (2009), when analyzing employment discrimination actions brought under the Illinois Human Rights Act, the IHRC and the Illinois Appellate Court apply the same analytical framework used for claims brought under Title VII. *Zaderaka v. Illinois Human Rights Com'n*, 131 Ill.2d 172, 178 (1989). This means that there is no analytical difference between raising a race-based employment discrimination claim under the IHRA or Title VII.

8

Amendment and *Kremer*, 456 U.S. at 480). Due process requires "the opportunity to be heard at a meaningful time and in a meaningful way." *Mathews v. Eldridge*, 424 U.S. 319, 333 (citations omitted). This is a flexible concept that balances the private interest affected by the official action; the risk of an erroneous deprivation; the probable value of additional or different procedural safeguards; and the government's interest. *Id.* at 335. The requirements vary by proceeding. *Hannah v. Larche*, 363 U.S. 420, 440 (1960). Administrative hearings require fewer safeguards than judicial ones. *Id.* at 450–51. While Mitchell missed the IDHR's fact-finding conference, he had an opportunity to present his evidence to the IDHR investigator over the phone. [24-1] at 11–12, 24–25. The nine witness statements Mitchell attached to his complaint were included in the IDHR's investigation (regardless of whatever the HR manager said about the witness statements). [24-1] at 8; *see Luckett v. Jett*, 966 F.2d 209, 215 (7th Cir. 1992) (the IDHR's procedures for investigating complaints comported with due process requirements). After the IDHR dismissed his complaint, Mitchell had the opportunity to raise new arguments and evidence before the Commission. 775 ILCS § 5/8-103(B). He could have submitted witness statements and additional rebuttal evidence. *Id.*[10] He could have raised his concerns about B-Way's HR manager,

---

[10] Once the request for review is filed with the Commission, the Commission will not accept additional arguments or exhibits. 56 Ill. Admin. Code § 5300.410. Additionally, the record on appeal to the Illinois Appellate Court is limited to the record before the Commission. *See* 735 ILCS § 5/3-110. To the extent Mitchell learned of new, relevant evidence after filing his request for review before the Commission—evidence that Mitchell does not describe—Mitchell's only option was to raise his concerns via argument before the Illinois Appellate Court. For example, in one of his chronological entries, which is inadmissible, Mitchell suggests he should have been given access to B-Way's investigation file. [31] at 8. While it doesn't appear that Mitchell had rights to his employer's files, there is some merit to the argument that it violates due process when a complainant cannot access the IDHR's full

9

including the manager's failure to discipline a different Hispanic employee in an earlier workplace safety incident. [15] at 11. In other words, just because the HR manager might have lied does not mean Mitchell wasn't afforded due process and an opportunity to present his side of the story. To the extent Mitchell received incorrect advice about supplementing the record, he took that risk by filing pro se. *See In re Estate of Pellico*, 394 Ill.App.3d 1052, 1067 (2nd Dist. 2009) ("pro se litigants are presumed to have full knowledge of applicable court rules and procedures"); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir.1998) (despite the leniency sometimes accorded to pro se litigants, they still must comply with procedural rules to ensure the evenhanded administration of the law). The Illinois Appellate Court similarly concluded that Mitchell wasn't denied due process because he had sufficient opportunity to present his evidence at each stage of the process.[11] Given these multiple levels of review, Mitchell received adequate notice, an opportunity to be

---

investigative file before filing a request for review with the Commission. *See Cooper v. Salazar*, 196 F.3d 809, 816 (7th Cir. 1999). But even if Mitchell didn't have access to the full investigative file before filing his request for review, he would have had access to the investigative file before his judicial appeal. *See id.* But Mitchell did not raise any specific argument about being prejudiced by withheld evidence in the investigative file before the Illinois appellate court (or this court). The current Illinois regulations indicate a complainant may request access to the IDHR's investigative materials after receiving notice of dismissal, which suggests a complainant can access the investigative file before filing a request for review before the Commission. 2 Ill. Admin. Code § 926.210(b). Ultimately, I do not reach this argument because it is a complicated one that Mitchell does not raise, and "district courts are not charged with seeking out legal issues lurking within the confines of the pro se litigant's pleadings, and the court's duties do not extend so far as to require the court to bring to the attention of the pro se litigant or to decide the unraised issues." *Kiebala v. Boris*, 928 F.3d 680, 684–85 (7th Cir. 2019) (citations omitted).

[11] Mitchell's allegation that only two Commissioner's reviewed his case, instead of the required three, is not plausible since I take judicial notice of the Commission's decision, which contains three signatures. [24-1] at 14.

10

heard, and a decision by a neutral decision maker. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Withrow v. Larkin*, 421 U.S. 35, 46–47 (1975) (describing the elements of due process). Ultimately, Mitchell disagrees with how the evidence was weighed—but that is a matter of interpretation, not due process. Mitchell had a "full and fair opportunity" to litigate his claim. Res judicata bars his race claim under Title VII.[12]

Mitchell brings three other claims under Title VII based on color, retaliation, and failure to promote. A plaintiff can only assert Illinois Human Rights Act or Title VII claims that he included in the original charge filed with the IDHR or EEOC. *Cervantes v. Ardagh Group*, 914 F.3d 560, 564 (7th Cir. 2019).[13] This requirement—called administrative exhaustion—gives the employer notice of the alleged misconduct and allows the government agency to use its expertise and attempt conciliation between the employer and employee without resorting to the courts. *Id.* Mitchell only alleged racial discrimination in his IDHR charge. [15] at 6. However, I can consider his three other claims if they are based directly on, or are "like or reasonably related" to what he described in his IDHR charge. *Cervantes*, 914 F.3d at 565. Color discrimination concerns discrimination based on the hue of skin tone. *See Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008) (describing light-skinned

---

[12] Even though Mitchell attempts to introduce his version of the facts in his complaint and response, I need not reach any arguments about collateral estoppel (which concerns issues of fact or law that were actually decided in a prior action and necessary to the judgement, *Lee v. City of Peoria*, 685 F.2d 196, 198 (7th Cir. 1982)) because the Full Faith and Credit Act bars relitigating Mitchell's claim.

[13] The IDHR evaluates employment discrimination claims under the IHRA, which applies the same framework as Title VII. *See* footnote 9, above.

11

versus dark-skinned discrimination within the same race). Mitchell's charge contains no allegations suggesting discrimination based on skin tone. Retaliation occurs when a plaintiff engages in a statutorily protected activity, and the employer takes a materially adverse action against him for doing so. *Cervantes*, 914 F.3d at 566. A retaliation claim is not automatically "reasonably related" to a discrimination claim. *Id.* at 565. Here, the circumstances and participants described in Mitchell's IDHR charge do not describe retaliation or suggest that a retaliation claim could reasonably be expected to grow out of the IDHR's investigation. *See Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (describing when retaliation and discrimination claims are closely related). Finally, Mitchell's claim about termination, which is a discrete act, does not reasonably relate to his failure to promote claim, which is a different discrete act. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir.2000) (stating that claim for discriminatory suspension is not like or reasonably related to failure to promote claim). It's not even clear when the failed promotion occurred. Because Mitchell's IDHR charge fails to contain any description or allegation that reasonably relates to his new claims based on color, retaliation, or failure to promote, he cannot proceed on these three Title VII claims for failing to exhaust his administrative remedies.[14]

Mitchell also alleges the same theories of discrimination—race, color, retaliation, and failure to promote—under Section 1981 of the Civil Rights Act of

---

[14] Furthermore, the statute of limitations, which requires plaintiffs to file Title VII claims within 300 days of the alleged discriminatory act, 42 U.S.C. § 2000e–5(e)(1), has passed for Mitchell's color, retaliation, and failure to promote claims.

1866, which guarantees equal rights to all citizens regardless of race and, in the context of employment, provides that all people have the same right to make and enforce contracts as white citizens. *Morris v. BNSF Railway Company*, 969 F.3d 753, 758 (7th Cir. 2020) (citing 42 U.S.C. § 1981). While subject to the same liability standards as Title VII claims, *id.*, § 1981 does not require a plaintiff to exhaust his administrative remedies before filing a claim in federal court. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007). Discrete employment actions—like termination based on race or color, retaliation, or failure to promote—are subject to a four-year statute of limitations. *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 927 (7th Cir. 2006). Filing charges with the IDHR or EEOC does not stop the statute of limitations clock for § 1981 claims. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 551, n.13 (7th Cir. 2002) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975)). Here, the alleged acts took place in 2010 or earlier, more than ten years ago. The statute of limitations has passed, and Mitchell can no longer assert his § 1981 claims.[15]

---

[15] Because the statute of limitations bars Mitchell's § 1981 claims, I need not reach the issue of whether his § 1981 claims are also barred by principles of res judicata under the Full Faith and Credit Act. Mitchell could not have raised his § 1981 claims before the IDHR or the Commission because those bodies cannot adjudicate federal claims. *Blount v. Stroud*, 232 Ill.2d 302, 326–27 (2009). Nor could he have raised a § 1981 claim on appeal. *See Young v. Illinois Human Rights Com'n*, 2012 IL App (1st) 112204, ¶ 50 (an appellant cannot raise new arguments or evidence before the Illinois Appellate Court) (citing 735 ILCS § 5/3-110 and 775 ILCS § 5/8-103(B)). By choosing to appeal his IDHR dismissal to the Commission, a court of limited jurisdiction, Mitchell forfeited his opportunity to commence a civil action in Illinois circuit court, 775 ILCS § 5/7A-102(C)(4), a court of general jurisdiction, where he could have raised his federal civil rights claims. *See Blount*, 232 Ill.2d at 328 (state circuit courts are presumptively competent to adjudicate federal claims). If Mitchell had failed to raise his federal claims in state circuit court, they would be barred by res judicata. *See Dookeran v. County of Cook, Ill.*, 719 F.3d 570, 578 (7th Cir. 2013). But it's not clear that by requesting the Commission's review, a plaintiff automatically forfeits any federal claim he could assert

Finally, Mitchell's response to B-Way's motion to dismiss reviews his concerns about: retaliation, the alleged mistreatment by B-Way's HR manager, incorrect legal advice he received, problems he experienced submitting evidence and supplementing the record, the collaboration between B-Way, the Commission, and the IDHR, and his interpretation of the evidence.[16] His response fails to address any of B-Way's legal arguments about res judicata, the Full Faith and Credit Act, the claims covered by the IDHR charge, the statute of limitations, and collateral estoppel. By failing to respond, Mitchell forfeits all of his claims. *See Firestone Financial Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("a party generally forfeits an argument or issue not raised in response to a motion to dismiss").

All of Mitchell's claims are dismissed with prejudice. *See Bernstein v. Bankert*, 733 F.3d 190, 224 (7th Cir. 2013) ("a dismissal on res judicata grounds—is a dismissal

---

in federal court. *See Hayes v. City of Chicago*, 670 F.3d 810, 815 (7th Cir. 2012) (the Illinois Supreme Court has outlined six exceptions to the application of res judicata, including where the plaintiff was unable to obtain relief on a claim because of a restriction on the subject-matter jurisdiction of the court in the first action) (citing *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 341 (1996)). B-Way also argues it would be fundamentally unfair to allow Mitchell's federal lawsuit to proceed. But that rule concerns relaxing the application of res judicata due to fundamental unfairness, *People v. Somerville*, 42 Ill.2d 1, 4 (1969), whereas here B-Way seeks its strict enforcement. While the EEOC's delay in issuing a right to sue letter is prejudicial to B-Way, the delay is also prejudicial to Mitchell to the extent the delay is not his fault.

[16] Any collaboration between the IDHR, the Commission, and B-Way during Mitchell's state court appeal was not improper because all three were the appropriate respondents in the case before the Illinois Appellate Court. Mitchell initially filed a complaint against B-Way; when he sought review of the IDHR's decision, the IDHR became his adversary, and so did the Commission when Mitchell sought to overturn the Commission's decision. Mitchell was alone because he chose to proceed alone as a pro se litigant.

*with* prejudice"); *Conover v. Lein*, 87 F.3d 905, 908–09 (7th Cir. 1996) (claims barred by the statute of limitations are dismissals with prejudice).[17]

## IV. Conclusion

B-Way's motion to dismiss, [23], is granted. Mitchell's claims under Title VII and § 1981 are dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: January 11, 2021

---

[17] While the dismissal of claims for failure to exhaust is typically without prejudice, *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002), here the statute of limitations has run on Mitchell's three other Title VII claims.